Good morning. May it please the Court, I'm Eric Trout on behalf of Aura and Michael Scantlin. And what I'd like to do is reserve five minutes. All right. Please watch the clock. The time remaining is your total time. Got it. Thank you. Okay. All right. I would like to first start out by talking about what the heart of this case is. And it's based on testimony that we heard during the first trial from Mr. Scantlin's supervisor. And it reads, that's our bubble, that's our safe spot. You should be able to go in there and work. You're talking about the bus bar? I'm talking about the barrier that is supposed to protect that safe area from the bus bar of 480 volts. And that's how Mr. Scantlin was injured. But the question is, how do we determine whether or not that's a safe spot? To me, the issue is whether or not that's something that a lay jury can determine or whether or not there needs to be expert testimony to explain why that's a safe spot. That's the issue under the consumer expectation test that is presented in this court, one of two big issues. The other one is, should the district court have allowed the pretrial conference order to be amended and allowed us to proceed in the direction of risk benefit? And I'll touch on that one in a little while, but you brought up the consumer expectation test, which needs to establish the barrier wall did not perform as safely as an ordinary consumer would have expected when used in an intended or reasonably foreseeable way. Counsel, who is the ordinary consumer in this context? Well, the ordinary consumer in this context would be the jury who's determining the result of the case. The ordinary consumer would be those folks who are looking at something based on their common experiences amongst them to determine whether that protected area, that safe zone, should not have exploded. Would lay people on a jury normally be using an electrical barrier with a bus bar? No, but they would be familiar with what a barrier is supposed to protect. And that's the simple concept, and that's where we had the issue with the district court in this case, was the simple concept that a lay person can look at and figure out is that if you press against a, if you know that this safe zone, and we had plenty of testimony to say that this was a safe zone, there was nothing complicated as what the case law says in instances where expert testimony was necessary under consumer expectation. As an example, the case cited by GE in this case was a bucket that came down and crushed an individual laborer. And the issue was more complex in that case in Lungi because you were talking about an electronic system that controlled whether that bucket would fall if the foot was on the brake, if the power was shut off. There were more intricacies to it. That isn't this case at all. Well, wouldn't one have to consider the way in which the user of the bus bar was utilizing the facility in terms of the pulley and the mechanism to pull the wires through? Wouldn't that be part of the contemplation of the consumer expectations test? Well, no. That only comes into a comparative analysis, how he pulled the pulley and whether he should have been pulling the pulley. I think the crux of the issue is the safe zone and whether a jury of the community can figure out whether that safe zone should have remained a safe zone and not exploded. I think they'd figure that out if they didn't consider how the safe zone was being used. Well, they would have that information, and they would have that from the supervisor of Mr. Scantlin, from the owner of the company who testified in the first trial. We had, and I believe the court requested a copy of the animation of this event. And it puts it in very simple terms, and it's not just an animation based on a theory. It's based upon evidence. It's based upon testimony. And when you sit back and you think, well, can the jury figure out whether leaning up against this bus bar when somebody's working in what they believe to be a safe compartment, whether leaning up against that bus bar should cause it to explode? It's a simple concept. Barrier means barrier. It doesn't mean maybe it's a barrier. Maybe it's not a safe zone. And the case law that, obviously, this has been very extensively briefed. I won't go into all the case law. But if you look at the other cases that are cited by GE in this instance that have called out for expert testimony, it has been more complex issues than is this barrier safe, is the metal too thin. And I'll remind the court that in the first trial, which we were two days away from getting this to the jury and preserving the Seventh Amendment and giving Mr. Scantlin his right to a jury trial, two days. And the court ruled that I don't think your expert can testify as to causation, meaning that that bus bar should not have flexed. But that was when you were proceeding on a different theory? We were on the risk-benefit analysis, right. And so the court said you can't, we're not allowing that testifying. The court was saying that there was no need for expert testimony on the risk-benefit theory or that the evidence was such that as a matter of law, there was no negligence. Was it the latter or the former? It was the latter. That as a matter of law, we don't think that this expert should testify as to causation. Why not? What was the reasoning given by the court as to why the expert should not testify as to causation? The reasoning was because she didn't think it was in the purview of that expert, which was he was an electrical engineer. We also had a materials expert. But the electrical engineer, she did not think it was within his expertise to talk about whether this wall should flex as far as it did. And this court reversed that decision, sent us back. But in the interim, then a decision, a tactical, a strategic decision was made not to follow that theory. And so theoretically, there could have been a second trial. That expert could have testified, and then the result would have been whatever it was. But there was a reason, tactical decision to go on a different theory. And I'll tell you, the tactical decision was very simple. We focus group this case. Right. And the UL labs is like the good housekeeping seal to some folks. So absolutely, we made the tactical decision to go, okay, let's do the consumer. Because the juror said if it passed the UL test, I would think that it's safe. And so a calculated decision was made, we probably won't be able to prevail using that theory. Or to put it a different way, that there may be a greater likelihood of prevailing if you went to a different theory. That was our thought. So it's absolutely true. The GE presses that point in their brief that, hey, you made a tactical decision. Well, making a tactical decision doesn't preclude someone's Seventh Amendment right to a jury trial. Absolutely. And more importantly, what is striking in this case is that when we realized the day before this jury trial was supposed to start, that, uh-oh, this court is now precluding the consumer expectation test, we need to go back to the risk-benefit. We filed. Or preclude the test or just say that you needed an expert. Said that we needed an expert and invited us to just have a judgment entered at that point. And we said no for two reasons. One, we wanted to brief it. But more importantly, the final pretrial conference order had not been signed and entered, which is huge when you look at the case law in this instance. But there is a significant discretion vested in the trial court in terms of amending the pretrial order, because that really has dictated the course of the trial to that point. And so could you fault a district court judge for not wanting to amend the pretrial order at that date to accommodate another theory that had been rejected? Do you think that's abuse of discretion? Yes, for two reasons. One is the abuse of discretion guide is manifest injustice. And knowing this court knew that we had already proceeded and almost finished the case under risk-benefit. The court knew that. And we said we are ready to go. If the defense wants a brief continuance, although the experts and the witnesses were almost uniformly going to be the same, we had already been down that road, the court wouldn't allow it. Counsel, you know that if you spent months and weeks preparing for trial on one theory, that doesn't prepare you for another theory that you've tried a significant period of time before. In this instance, it wouldn't have been that different of a trial. It really wouldn't. The witnesses would have been nearly identical. Mr. Hanlon can address that. I'm sure he will when he gets up here. But we would, from our perspective, we could have started the next day. We submit a new set of jury instructions that aren't new. They'd already been submitted prior in the other trial. But we, at that point, we were hog-tied. We could not proceed under risk-benefit according to the court. And what the court did is went back and signed the pretrial conference order after we submitted the new one, asking for us to be able to proceed under risk-benefit. And then invited the summary judgment motion that was then heard in October. Counsel, you're down to four minutes and 14 seconds. All right. I'm going to go ahead and reserve then. All right. Thank you. Good morning. May it please the Court. James Hanlon for Appley General Electric. Your Honors, I'd like to start by correcting a few of the things that came up during the appellant's argument. Counsel described the ordinary consumer of the switchboard as the jury. That is incorrect and contrary to the same counsel's discussion with the district court at SER 151. Let me find my notes. This is at the final pretrial conference. I'm quoting from the district court. Here the ordinary consumer is not a layperson. A layperson meaning someone like any of us who aren't ever trained as an electrician. It's an electrician with some degree of special training who is working on this kind of equipment. Are we in agreement on that? Counsel answers, yes. That is exactly, that's the same question. And it's, in fact, the same lawyer who just argued that the ordinary consumer is someone, or that the ordinary consumer is a juror. And if the court looks at the appellant's summary judgment opposition brief at SER 41, I'm quoting now, it is a case about whether an electrician would reasonably expect to be safe working inside a switchboard. Again, identifying the ordinary consumer as an electrician, not a layperson. That admission was made throughout the case, and the argument to the contrary is contrary to the record in many locations. We have a section of the answering brief discussing this. I don't want to spend much time talking about the first appeal as much as I'd like to go back and have a different result. That's not the way this works. But, Judge Rawlinson, you asked why plaintiff's expert was excluded at the first trial, and it was not because it was outside of his purview to opine about whether the wall could have flexed and caused the electrical explosion. Instead, the district court found that he had not followed the scientific method. So it didn't go to his qualifications. It went to his methodology. The last thing I want to correct is counsel suggested that the final pretrial conference order had not been issued when the district court issued its decision on October 6, 2014, finding that the plaintiffs could not prevail under the consumer expectation test. And this was discussed during a telephonic hearing with the district court the next day on October 7th. And appellant's counsel, again, the same lawyer, said, have the court signed the pretrial order, talking about the day before, when the appellant submitted a new request to switch to the risk-benefit test. And the court answered yes, the final pretrial conference order had been signed. And then she went on to explain that sometimes there are delays in docketing, which is why it didn't show up on the docket. But the record is clear at SDR 105 and also at SDR 84 through 85 that the final pretrial conference order had been entered. So we are clearly under the Rule 16E manifest injustice standard here. Well, he admitted that it's manifest injustice. So even if you disagree with his representation of the chronology, he agrees that manifest injustice is the standard that we're looking to. So why isn't this manifest injustice for the district court to amend the pretrial order to allow a theory of recovery that had previously been litigated and that counsel says your client could be ready to defend with a couple of days' continuance? Well, as you noted, Judge Rawlinson, and I know before you took the bench you used to try cases, when you prepare a case under a particular theory with different evidence, you can't just switch back and say, oh, we tried it under a different theory three years ago. We can have our experts up to speed in a day and be ready to go with the sort of professional high-quality representation that this case in the court requires. And the district court said this in the summary judgment order at ER 24, it would be unjust to compel GE to re-prepare for trial based on plaintiff's last-minute change of theory following an adverse ruling. And there are really two parts to that statement that I want to raise with this court. The first is that this was a last-minute change. This was literally the day before trial, and we cited this court's prior precedent. Counsel, could I just ask you a question? It seems to me that this is the weakest part of the four-factor test, prejudice to the defendants, because your side has been perfectly aware of this issue going back three years. Isn't that true? Well, Judge O'Scanlan, clearly we were aware that the plaintiffs had an option to try this case under the risk-benefit test, and three years ago they had elected to do it. Now, are you talking about the issue being whether they could proceed under the consumer expectation test because they were missing evidence? Well, I'm talking about whether the court abused her discretion in refusing to amend the PTO. And, of course, there is that four-factor test. I gather it's under Hunt v. County of Orange. There's probably other cases as well. But I just wonder whether we could really rely on the notion that somehow GE was prejudiced by this because GE certainly understood what that theory was. Now, there's another question as to the timing, but in terms of being aware of this alternative approach, certainly is it not fair to say that GE was aware of that? Judge O'Scanlan, clearly GE was aware, of course, that the plaintiffs had the option to proceed under the consumer expectation test, and the case had been tried on that basis three years earlier. But here the plaintiffs had made an informed election, as came out during the appellant's argument, to switch to the consumer expectation test to get what they perceived to be an important evidentiary benefit. At that point, GE says, okay, we have a new ballgame here. We have to prepare a new trial because the evidence and the analysis for the jury is different. We have some witness overlap, but, frankly, trying a case about whether the switchboard performed as safely as an ordinary electrician would expect is very different from having experts come in and explain from a technical engineering perspective the risks and the benefits to the switchboard's technical design. There are very different ways of approaching trying a personal injury product liability case. And we had assembled for trial. We were in Riverside. We had our war rooms ready to go. We had our client representatives had flown from the East Coast. All of our witnesses were ready to go. And so we clearly were ready to proceed. And there's a lot of cost getting ready to proceed the day before a trial. So GE clearly suffered a monetary prejudice here. But also, Your Honor, under our system of justice, when a party pushes an issue or a position to a dispositive ruling from the district court, which is what happened here. The appellants didn't seek to change course until the district court made a dispositive ruling. The other party is entitled to rely on that dispositive ruling. The plaintiff doesn't get a do-over when the district court says you're going to lose. Defendants only have to win cases once in our system of justice. In just about every case that results in a defense decision on summary judgment or on a Rule 50 motion, the plaintiffs could say, well, gosh, if we'd made this other choice, perhaps we'd end up in a different circumstance. Can we have a do-over? And that is exactly what's happening here. They made an informed, strategic decision to switch courses. We prepared based on that. We were ready to go. There was an adverse decision that ended the case, and GE is entitled to rely upon that. That's how our justice system works. So I think that the prejudice here is very strong, and under the four factors on hunch, Your Honor, I think that the prejudice to the defendant is, frankly, one of the stronger of the four. I think they're all four very strong here. And as we pointed out, this court has affirmed district courts denying amendment of final pretrial conference orders under circumstances that are less extreme than this one. In the Colvin case, the plaintiff wanted to add a new theory two weeks before trial. In the Eagle case, the plaintiff sought to add a new damages theory at summary judgment before there was a dispositive ruling. In the Hunt case, the plaintiff wanted to add a new claim three weeks before trial. In each instance, the district court said, no, that would be unjust, that would be improper under Rule 16. You can't show manifest injustice. And these circumstances here are more extreme than any of those three cases. And further, in this court's decision in Johnson, which is also cited in our case, that was one where the plaintiff's counsel had ignored discovery responses and said that they had mismanaged the case. In other words, they were saying we made poor or ill-informed strategic decisions. Our client shouldn't have to bear the cost of those. We should be allowed to switch theories of our case. And the court said, no, that's not manifest injustice when you lose, which is essentially what we're hearing from the appellants in this case. I do want to address a couple of counsel's other comments. In this case, counsel argued that barrier means barrier. And really, first of all, the product at issue here, as the district court found, is the switchboard. But down below, if your honors read some of the summary judgment arguments, counsel raised an example. They said if a member of the public goes to the zoo and the tiger jumps out of its enclosure and attacks them, a jury can evaluate whether that barrier that was supposed to keep the tiger in the enclosure functioned as safely as an ordinary consumer would expect. And they tried to say that's just like this case with Mr. Scantlin and the switchboard. And, in fact, it's not. And the example shows why a barrier is not a barrier. Jurors go to the zoo. Lay people go to the zoo. Lay people do not go inside switchboards. There are warning symbols all over them. They're intended to be used only by electricians, as I pointed out at the beginning of this argument. The apt analogy would be if the tiger attacked someone in the private parts of the zoo where the zookeeper worked. If someone, for example, leaned on a wall in the private zookeeper part of the enclosure and the tiger was able to claw them. Frankly, jurors wouldn't be able to tell whether a zookeeper could reasonably expect to lean on walls in a private back part of the zoo. And it's exactly the same here on the switchboard. Lay people don't even know what a switchboard is. In fact, the appellant's human factors expert didn't even know what a switchboard was when he was hired for this case. They have no idea. I mean, put yourselves in the position of a juror. Someone opens the door of a switchboard and says these two compartments are de-energized. In fact, they're on the other side of that piece of steel. There's 480 volts of electricity that can kill you. Do you want to walk in and start leaning on things? They're going to say, heck no. I don't know what I can touch. I don't know what I can lean. That's a dangerous piece of equipment, and I don't have sufficient knowledge to even go in there, much less evaluate what I can lean on. And that's the crux of this case. That's why just like in the Lungi decision where the California Court of Appeals said a juror wouldn't know what to do with a bobcat front loader, a juror wouldn't know what to do with a switchboard. I mean, at least laypeople know what a bobcat front loader is. They see them on construction sites. But they don't have informed expectations about whether you can stand under the bucket when it's elevated with the loader being turned off. But here, as I said, jurors would have no idea. A rational person would never even go in a switchboard, much less have an informed or reasonable basis to decide what it was safe, what they could expect to be safe leaning on. And that is the crux of this case. I just want to use my last couple of minutes to perhaps anticipate an issue that hasn't yet come up. There was a lot in the briefing in this case about did GE act strategically in raising this issue late, a week before the final pretrial conference. I do realize on rebuttal that opposing counsel can only address those matters you've addressed. I do, Your Honor, but I want to presume that the court hasn't asked me all the questions you might have interest in. And I won't belabor this. On remand, the case was remanded in May 2013. We had status conferences in June and August 2013. And the plaintiff's counsel never informed the court or GE that they were switching from the risk-benefit test to the consumer expectation test. They didn't inform anyone of that until they filed their updated memo of contentions of facts and law on December 24, 2013, which was two months before trial. And so that is when we learned. At that point, we're two months before trial. The time for bringing a summary judgment motion was actually foreclosed before we even went back on remand. And so we were prepared to proceed to trial to make the best of it. We, unfortunately, had a defense expert get ill and die, so the trial had to be continued. But in the last appeal, we faced a lot of allegations of sandbagging for not raising a Rule 50 issue before trial, even though there's no obligation to do so. That's why we filed the brief a week before the final pretrial conference to elevate this issue, not so much for the appellants, because we'd already told them about their Lungi problem during the prior briefing in this court, but for the district court, so that she had the opportunity to think about this issue, research it, and didn't have to decide it under the pressure of trial, which is what the panel last time has sort of indicated was a better course. So unless the panel has any further questions, I'll sit down. It appears not. Thank you, counsel. Thank you. All right. I'd like to first address the issue related to the need or lack thereof of expert testimony in a consumer expectation test. The Sewell case says, quote, a lay jury is competent to determine the design or the product is defective if it performs so unsafely that the defect is apparent to the common reason, experience, and understanding of ordinary consumers. And when you look at this case and you take it even a step further, they're not going to just be ordinary consumers sitting in the jury box. They are going to hear testimony from Mr. Scantlin, who's been an electrician for a long time. They are going to hear testimony from a supervisor laying out why this is a safe compartment. It's nothing beyond the scope of, it's nothing that an expert needs to say, eh, this is a safe compartment. That appears to be a little different than the framework that the parties proceeded under in the district court that the consumer was an electrician. Do you agree that that was the framework under which you all proceeded in district court? We did under the framework of an electrician because that's who was going to be testifying about it. Yes. But you say that's the ordinary consumer in this case? Well, no, I wouldn't say that's the ordinary consumer. Do you agree to that in the trial court, that the ordinary consumer for purposes of this case is an electrician? Yes, based on the evidence that was coming in. I think the distinction here is can the jury, since they're not electricians, obviously, understand that this is a safe zone and base their understanding on the testimony of witnesses who are going to come in and talk about how they didn't expect this to explode. Who are not experts. Who are not experts, who have had the experience. Hornick, as an example, the human factors expert who was going to come in and testify, Hornick, would testify and did that the device was extremely simple. This wasn't a complex lungy issue. It was very simple. But if he's not an electrician, what's the basis for his saying it's simple? Why should the jury believe that from him? Because having a barrier protect you from something that's live and 480 volts is a simple concept to take in and understand. That was his point. How was the jury to understand that this particular barrier that encompasses a very dangerous element was simple? How would the jury get that? Well, they would see the animation that was based on the testimony that all of you saw. We had a full mock-up, the actual switch gear in the courtroom to make it very simple for them to understand the concept. And you not only have experts talking about how the switch gear works and operates, but then you have the people who are in it, the electricians. So this wasn't void of information to allow ordinary consumers to figure it out at all. My last minute, the degree of, when you talk about abuse of discretion in failing to allow the pretrial conference order to be amended, there was no degree of prejudice beyond very minor for the defense, as counsel indicated. The only argument would be more technical under one theory versus the other. So you'd elicit more technical testimony, which had already been done in the prior trial. And there was no point in switching gears early on, because we didn't have the order of the court saying, okay, I'm either going to enter a judgment now or set a summary judgment motion the day before trial was set. So when you talk about manifest injustice and preservation of the Seventh Amendment, which unfortunately has been dying in recent years, and the ability of people to get to trial in front of their peers has been dying, that is a grave injustice and manifest injustice in this case. You did have a trial on this case, and you had the opportunity to have a retrial on this case. So you weren't deprived of the opportunity to have a trial. The issue was what theory that trial would proceed under. Well, we didn't finish the first trial. We were still a couple days away from getting it to the jury, so we never did. You didn't finish it, but you had a trial. Yes. You were given the opportunity for a trial. Let me ask you this, counsel. What is our standard of review on the determination that an expert was required? What is our standard for reviewing the district court's decision on that issue? I believe it's de novo. And the last point I want to make is in Campbell v. GM, the policies behind the rule of strict products liability favors jury resolution whenever the evidence can be interpreted to support plaintiff's position. And we had that in this case, and twice it was taken away. And to blame plaintiff's counsel for tactical decisions, they should just bear the burden and Mr. or Mrs. Scantlin should not have their day in court, is not justice and is not based on any case law that I read. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. With thanks to counsel for your helpful audience.
judges: O'scannlain, Fernandez, Rawlinson